247 N.J. Super. 464 (1990)
589 A.2d 668
D.R., AN INCOMPETENT BY HER GUARDIAN, A.F., PLAINTIFF,
v.
DAUGHTERS OF MIRIAM CENTER FOR THE AGED, DEFENDANT.
Superior Court of New Jersey, Chancery Division, Passaic County.
December 20, 1990.
*465 Dennis A. Maycher for A.F., Guardian of D.R.'s person (Maycher & Molinelli, attorneys).
Thomas A. McKinney for Daughters of Miriam Center for the Aged (Waldman, Renda & McKinney, attorneys).
William A. Amann for Midlantic Bank, Guardian of D.R.'s property (Joseph A. Hallock, attorney).
Samuel G. Destito, Guardian Ad Litem for D.R. (Williams, Caliri, Miller and Otley, attorneys; Darlene J. Pereksta on the Brief).
Kevin H. Marino for the Department of the Public Advocate.
SAUNDERS, P.J.CH.
This written opinion supplements an oral opinion rendered from the bench on October 4, 1990.
This case presents a novel issue arising out of tragic circumstances. What criteria must a court apply when deciding whether to grant a guardian permission to obtain an abortion for his ward? As in In re Quinlan, 70 N.J. 10, 355 A.2d 647 (1976) cert. denied, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976) and In re Grady, 85 N.J. 235, 426 A.2d 467 (1981), the court here must also resolve the paradox of how to "preserve *466 the personal freedom of one incapable of exercising it by allowing others to make a profoundly personal decision on her behalf." In re Grady, 85 N.J. at 240, 426 A.2d 467.

HISTORY
In 1984, at the age of 27, D.R. suffered severe brain damage as a result of the improper administration of anesthesia during the delivery of her third child.[1] After brief stays at various institutions, D.R. was placed at Daughters of Miriam Center in 1986.
On September 19, 1990, Daughters of Miriam informed A.F., D.R.'s father, as well as legal guardian, that D.R. was 21 weeks pregnant by an unknown male. After conferring with D.R.'s natural mother, D.R.'s stepmother, and two physicians, A.F. decided that he wanted D.R.'s pregnancy terminated.
An Order to Show Cause filed October 1, 1990, sought leave of court to procure an abortion for D.R.[2]
This court, sua sponte, appointed an independent guardian ad litem to represent the interests of D.R. The Attorney General and the Public Advocate were invited to appear as amicus curiae, however, the Attorney General declined to intervene. The only other interested party was Midlantic National Bank, guardian of D.F.'s property.[3]

ARGUMENT
All the parties present except the Public Advocate argue that the standards set forth in Grady, supra, should be controlling.
*467 In Grady, parents of a 19 year old mentally impaired woman sought to have their daughter sterilized. The Supreme Court, in an insightful opinion, established a two prong test for the judicial authorization of sterlization.
Justice Pashman speaking for the Court found the right of sterilization to be analagous to the right to an abortion and the right to use contraceptives. The Court held that the right to be sterilized is included in the privacy rights protected by the federal and state constitutions (more specifically the right to reproductive autonomy). The Court then went on to explain that because this constitutional right is personal to the individual, the Court through its parens patriae power must see to it that the right is protected. The Court stated that since the parents' interest in their child's sterilization might not be identical to the child's interest, it is the court who "must be satisfied that sterilization is in the best interests of the incompetent person." Grady, 85 N.J. at 264, 426 A.2d 467.
To ensure that the incompetent's best interest is being served, the Grady Court ruled that an independent guardian ad litem must be appointed:
The guardian must have full opportunity to meet with the incompetent person, to present proofs and cross-examine witnesses at the hearing, and to represent zealously the interests of his ward in other appropriate ways.
In addition, the court should receive independent medical and psychological evaluations by qualified professionals. In re Hayes, supra, 93 Wash.2d 228, 608 P.2d [635] at 641 [(1980)]....
The incompetent person need not be present at the proceedings if the court determines that his presence would not be useful in protecting his rights. Nevertheless, the trial judge should personally meet with the individual to obtain his own impressions of competency.... The incompetent person should be given every opportunity to express his own views about the judicial proceedings and the prospect of sterilization. In re Hayes, supra, 93 Wash.2d 228, 608 P.2d at 641. [Id. 85 N.J. at 264-265, 426 A.2d 467.]
The Supreme Court stated that once the above information is obtained, a trial court must then apply a two prong test to *468 determine whether sterilization should be authorized.[4]
First, "the trial judge must find that the individual lacks capacity to make a decision about sterilization and that the incapacity is not likely to change in the foreseeable future."[5]Id. at 265, 426 A.2d 467. Secondly, the trial court has to find that sterlization is in the incompetent's best interest, taking into account the particular circumstances of each case.
In view of the analogy the Grady Court made between the right to an abortion and the right to sterilization, as well as the obvious similarities between the two rights, D.R.'s personal guardian, property guardian and guardian ad litem argue that the Grady two prong test should be followed in this case.
The Public Advocate, however, requests that the court insert a middle prong into the Grady analysis in light of Matter of Conroy, 98 N.J. 321, 486 A.2d 1209 (1985) and In re A.C., 573 A.2d 1235 (D.C.App. 1990).
It is the Public Advocate's position that once a court finds the first prong of the Grady test is met (i.e., the incompetent lacks the capacity to make her own decision), then the court must attempt to make a substituted judgment "as surrogate for the incompetent, ... to determine as best it can what choice that individual, if competent, would make with respect to medical procedures." In re A.C., 573 A.2d at 1249, quoting In re Boyd, 403 A.2d 744, 750 (D.C. 1979). In attempting to discern the incompetent's intent, the court may consider any written or oral statement she directed to the issue, as well as her reactions to similar decisions made by or on behalf of others, her religious beliefs, and her "consistent pattern of conduct with respect to prior decisions about [her] own medical care." Matter of *469 Conroy, 98 N.J. at 362, 486 A.2d 1209. In short, the court must consider the "totality of the evidence" regarding the choice the incompetent would make were she able to make such a choice. If the court is unable to determine the choice the incompetent would make if she were able to choose, it would look to the third prong  the best interest of the incompetent.
Like Grady, Matter of Conroy also dealt with the constitutional right to control one's own body. The Conroy case involved an 84 year old bedridden woman with irreversible physical and mental impairments whose guardian sought to have her feeding tube removed. In that case the Supreme Court held that
[L]ife sustaining treatment may be withheld or withdrawn from an incompetent patient when it is clear that the particular patient would have refused the treatment under the circumstances involved. The standards we are enunciating is a subjective one, consistent with the notion that the right that we are seeking to effectuate is a very personal right to control one's own life. [98 N.J. at 360, 486 A.2d 1209.]
Similarly in In re A.C. the District of Columbia Court of Appeals ruled that, "If the patient is incompetent or otherwise unable to give an informed consent to a proposed course of medical treatment, then her decision must be ascertained through the procedure known as substituted judgment." In re A.C., 573 A.2d at 1237. In that case a hospital sought authority to deliver a terminally ill patient's 28 week old fetus.

DECISION
This court concludes that the three prong test which the Public Advocate supports is the correct test to be applied in the case at hand. It may be that a substituted judgment analysis was not considered in Grady because the facts did not give rise to it. The young lady in Grady was mentally incompetent since birth and thus no testimony could be elicited as to what she would have wanted if she could have made the choice herself. The later case of In re Conroy as well as the District of Columbia decision of In re A.C. leads this court to conclude *470 that where an incompetent has not been incompetent from birth and has led a fairly normal life until adulthood, a court must consider whatever testimony might be available concerning what the incompetent would have done under the prevailing circumstances in the exercise of his/her constitutional right to control his/her body.
In applying the facts of this case to the standards now established, this court makes the following findings:
(a) The first prong of the test has been met. D.R. is not competent to make a decision concerning procreation. This finding is based on the court's personal interview with D.R., as well as medical reports received and testimony elicited.
(b) With regard to the second prong, the substituted judgment procedure, no testimony was offered as to what D.R. would have done under the circumstances if she could have made the decision. D.R. never contemplated this situation when she was competent.
(c) Because no testimony was forthcoming with respect to the second prong, the best interest of D.R. must be examined. An independent obstetrician who examined D.R. on behalf of her guardian ad litem testified that performing an abortion at this late stage of D.R.'s pregnancy would pose a great risk to D.R. The doctor further testified that if D.R. carries to term her risks are no greater than that of any other 33 year old pregnant woman.
For reasons more fully set forth in this court's oral opinion, it is concluded that an abortion is not in D.R.'s best interest. A.F.'s application is therefore denied.
NOTES
[1] D.R. was thereafter adjudicated incompetent by Order dated August 9, 1985.
[2] The Order to Show Cause also sought the release of D.R. from Daughters of Miriam into A.F.'s custody. A Consent Order providing for the transfer of D.R. to another nursing home was entered October 4, 1990 (the return date of the Order to Show Cause).
[3] Midlantic's interest was that any medical procedure funded be legally appropriate.
[4] The proponent of the sterilization must prove by clear and convincing evidence that both prongs are met.
[5] The Court explained that, "[t]he fact that a person is legally incompetent for some purposes ... does not mean he lacks the capacity to make a decision about sterilization." Grady, 85 N.J. at 265, 426 A.2d 467.